UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **DORIS HOWARD,** } | |
| } | |
| Plaintiff, } | |
| } | |
| vs. } | **CASE NO. CV 07-B-330-NE** |
| } | |
| **KCA CORPORATION; K AND K** } | |
| **FOOD SERVICES; HARVEY** } | |
| **BENJAMIN FORDHAM, III,** } | |
| } | |
| Defendants. } | |

### MEMORANDUM OPINION

This case is before the court on defendant KCA Corporation's ("KCA") Motion to Dismiss Plaintiff's Complaint or, in the Alternative, Motion for Summary Judgment, (doc. 9).[1] KCA has asserted grounds for dismissal under both Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Federal Rules"), for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, respectively. Since KCA has submitted evidence with its motion, including an affidavit from its general manager, Thomas Neville ("Neville"), (doc. 9-4), the court must treat the motion to dismiss under Rule 12(b)(6) as a Rule 56 motion for summary judgment. *See* Fed. R. Civ. Proc. 12(b) (requiring conversion of 12(b)(6) motions to Rule 56 motions if matters outside the pleadings are presented and not excluded by the court). Howard has

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

1

submitted an opposition to KCA's motion, (doc. 16), along with a binder of evidence. In response, KCA submitted a reply brief, (doc. 18), with no additional evidence attached.

KCA initially alleges a lack of subject matter jurisdiction due to the fact that plaintiff Doris Howard ("Howard") failed to name KCA in her Equal Employment Opportunity Commission ("EEOC") charge and consequently has not exhausted her administrative remedies. Alternatively, KCA seeks summary judgment, arguing that there is no genuine issue of material fact as to whether KCA is Howard's "employer" for Title VII purposes, or as to any other material fact necessary for Howard to maintain her claims against KCA.

KCA argues that this court should follow the holding in *Williams v. KCA Corporation*, No. 06-2006, slip. op. (N.D. Ala. June 21, 2007) (J. Hopkins), (doc. 9-2).[2] In *Williams*, the court granted KCA's motion to dismiss for lack of subject matter jurisdiction on grounds that the plaintiff's failure to name KCA in her EEOC charge

---

[2] The motion before the court in *Williams* was also a 12(b)(1)/Rule 56 motion, and it appears that much of the evidence submitted to that court was the same as the evidence accompanying the instant motion and opposition, with the notable exceptions that 1) in the *Williams* opinion, there is no mention of a deposition of Mr. Frederick Anderson ("Mr. Anderson"), KCA's vice president, (doc. 16, ex. D, Sept. 27, 2007), and 2) the court in *Williams* apparently was not provided access to KCA's "Agreement of Assignment & Establishment of Joint Control Account," (doc. 16, ex. A). (Doc. 16 at 9 n.1.) Moreover, the plaintiff in *Williams* argued that KCA was the plaintiff's employer because it had "controlling authority" over the plaintiff's employment, or that, in the alternative, KCA was liable under a "single employer," "joint employer," or agency theory. (Doc. 9-2.) In the instant case, Howard argues that KCA is liable under a "joint employer" theory, a "highly integrated companies" theory, or a "joint venture" theory, and that a genuine issue of material fact exists as to whether KCA is Howard's employer. (Doc. 16 at 2.) The specific findings in *Williams* are discussed *infra*.

precluded a subsequent action against it. (Doc. 9-2 at 18–19, 26.) The court found that the plaintiff had not made a sufficient showing that Title VII's purposes would be fulfilled by subjecting an unnamed party to the jurisdiction of the federal courts. (*Id.* at 26.)

Howard has submitted to the court the opinion issued in yet another case involving the same defendant, *Reed v. KCA Corporation*, No. 06-1504, slip. op. (N.D. Ala. July 11, 2007) (J. Smith), (doc. 16, ex. I). Although the motion before the court in *Reed* did not involve a challenge to subject matter jurisdiction, but only requested summary judgment, the opinion in *Reed* is relevant to the present motion, since the court found that there was a genuine issue of material fact as to whether KCA was the plaintiff's employer based upon substantially the same evidence as in this case and in *Williams*, and also concluded that the plaintiff had *not* failed to exhaust her administrative remedies based upon a failure to name KCA as an employer in her EEOC charge. (Doc. 16, Ex. I, at 14, 16.)

Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that it should not dismiss KCA for lack of subject matter jurisdiction, and that it should instead evaluate the instant motion for summary judgment, as the court did in *Reed*. Taking the facts in the light most favorable to Howard, there is a genuine issue of material fact as to whether KCA is Howard's employer such that it may be subject to Title VII liability.

## I. Standard on Motion to Dismiss For Lack of Subject Matter Jurisdiction/ Motion for Summary Judgment

Under Rule 12(b)(1) of the Federal Rules, a party may move the court to dismiss a case if the court lacks jurisdiction over its subject matter. Fed. R. Civ. Proc. 12(b)(1). The plaintiff, as the party invoking jurisdiction, bears the burden of establishing the court's subject matter jurisdiction. *See Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir.1994).

Attacks on subject matter jurisdiction consist of two types: "facial attacks" and "factual attacks." *See McElmurray v. Consol. Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007). "'Facial attacks' on the complaint 'require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.), *cert. denied*, 449 U.S. 953 (1980)). Motions alleging facial attacks on subject matter jurisdiction therefore afford plaintiffs the same procedural safeguards as those in a 12(b)(6) motion, since the court must consider the allegations in the complaint to be true. "'Factual attacks,' on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *Lawrence*, 919 F.2d at 1529; *see also Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003) (deciding that a factual attack had occurred because the

4

motion to dismiss relied on extrinsic evidence and did not assert a lack of subject matter jurisdiction based solely on the pleadings). Presented with a factual attack, then,

> the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction — its very power to hear the case — there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Lawrence*, 919 F.2d at 1529 (citing *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. May 1981)[3]).[4] Notably, however, for factual attacks that not only challenge the court's jurisdiction, but that also implicate the merits of claims, the court should not dismiss the claims for lack of subject matter jurisdiction; instead, the court should apply a summary judgment standard and evaluate whether there is a genuine issue of material fact. *See id.* at 1530 (following *Williamson*). Thus, the court must determine first whether jurisdiction is intertwined with the merits, and only if it is not, decide dismissal for lack of subject matter jurisdiction under Rule 12(b)(1).

---

[3] In *Bonner v. Prichard*, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit announced prior to October 1, 1981. *See* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[4] The court in *Williamson* mandated that district courts presented with a factual attack on jurisdiction must give plaintiffs an opportunity for discovery and a hearing that is appropriate to the nature of the motion to dismiss. *See* 645 F.2d at 414.

If the court finds that jurisdiction and the merits of the claims are so intertwined that it cannot dismiss the claims under Rule 12(b)(1), the court must proceed to the issue of summary judgment and apply the usual summary judgment standard. Under this standard, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact and that it is therefore entitled to judgment as a matter of law. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has met its burden, Rule 56(e) of the Federal Rules requires that the nonmoving party go beyond the pleadings and show that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). "There is a genuine issue of material fact if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Determining credibility, weighing evidence, and drawing legitimate inferences from the facts are all functions of the jury, *see id.* at 255; therefore, the court must accept as true all evidence favoring the nonmoving party and draw all justifiable inferences from the evidence in that party's favor. Nevertheless, the nonmoving party need not be given the benefit of every

6

inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. Factual Summary[5]

Howard, a forty-six-year-old female who was formerly employed as a cafeteria worker at Redstone Arsenal, Alabama ("Redstone"), brings this action against KCA, K&K Food Services ("K&K"), and Harvey Benjamin Fordham, III ("Fordham"), alleging gender discrimination claims of wrongful termination, hostile work environment, and retaliation[6] under Title VII, as well as a negligent and/or wanton hiring, promotion, retention, supervision, and training claim under Alabama state law. (Doc. 1; Doc. 16 at 11.) KCA is a government food service contractor that employs approximately 400 employees. (Doc. 16 at ¶ 1.) Kyong Cha Anderson ("Mrs. Anderson") is the owner, president, and CEO of KCA, and Frederick Anderson ("Mr. Anderson") is KCA's vice

---

[5] The following summary includes both disputed and undisputed facts because, as noted above, the evaluation of KCA's factual attack on subject matter jurisdiction permits the court to weigh evidence and resolve disputed facts for itself. When evaluating summary judgment, however, the court must view the evidence and all reasonable inferences arising from it in the light most favorable to Howard, the non-moving party. *See, e.g., Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997), *citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citations omitted).

[6] Howard's retaliation claim is based upon an allegation that she was terminated due to her participation in the *Reed* case, in which the plaintiff submitted a declaration by Howard. (Doc. 16, Ex. I at 3.) Howard and KCA dispute the characterization of the content provided in this declaration, (*id.* at ¶ 25; doc. 18 at ¶ 25), but for the purposes of this opinion, the content of Howard's declaration in the *Reed* case is irrelevant.

president.[7]  (*Id.* at ¶¶ 5–6.)  As mentioned above, Neville is KCA's general manager.  (*Id.* at ¶ 11; doc. 9-4, Neville Decl., at ¶ 2.)  Billy Marble ("Marble") is KCA's regional manager.  (Doc. 16 at ¶ 11.)

It is undisputed that KCA, which is incorporated in Kentucky, operates food service contracts, either directly or in joint ventures with other vendors, at various military installations around the South; until either 1997 or 2003,[8] it directly operated the contract at Redstone.  (Doc. 16 at ¶¶ 2–3, Ex. C.)  KCA entered into a joint venture agreement with Fordham, a licensed blind vendor with special disability preference for the contract under the Randolph-Sheppard Vending Stand Act, to form the joint venture, K&K.  (*Id.* at ¶ 3, Ex. A.)  KCA holds 49% ownership in K&K, while Fordham has 51%.  (*Id.* at ¶ 4.)  KCA further admits that it continues to assist K&K in operating the contract by teaching Fordham, providing consulting services, and requiring that all managers,

---

[7] Additionally, KCA's general manager, Neville, describes Mrs. Anderson as "the sole officer and owner of KCA," (doc. 9-4 at ¶ 8), and Mr. Anderson testified that Mrs. Anderson has been KCA's sole shareholder since its incorporation in 1986, (doc. 16, ex. D at 8:21–9:6). Although not necessarily indicative of official titles, Mr. Anderson signed a union agreement under the title of "President," for the company, "K&K Food Service [sic]," (doc. 16, ex. E), and the EEOC copied its letter to Mr. Debruge, KCA and K&K's attorney, announcing the unsuccessful conciliation proceedings in Howard's EEOC charge, to "Mr. & Mrs. Anderson, Owners, K&K Food Services," (doc. 16, ex. L).  Furthermore, on November 15, 2004, Mr. Anderson signed a memo to the manager at Redstone as "Vice-President," without specifying whether he was signing on behalf of K&K or KCA, requiring all managers to terminate employees with excessive absenteeism. (Doc. 16, Ex. F.)

[8] Howard claims that KCA directly operated the contract until 2003.  (*Id.* ¶ 3.)  KCA disputes this assertion, pointing to testimony by Mr. Anderson that he did not remember when KCA had the contract, but only that it was before K&K took it over. (Doc. 18 at ¶ 3; Doc. 16, Ex. D at 28:18–29:6.)  Neville attests that K&K has employed all of the employees at Redstone since 1997. (Doc. 9-4 at 2.)

including Fordham, "report" to KCA employees Neville and Mr. Anderson at the "home" office in Kentucky. (*Id.* at ¶¶ 9, 12, 15, 18, Ex. H at Rule 24.) In addition, Mr. Anderson, along with Neville, created the workplace rules that currently apply to K&K employees, and Mr. Anderson retains exclusive authority to change them.[9] (*Id.* at ¶¶ 8, 16, 17, Ex. H; Doc. 18 at ¶¶ 16, 17.) Neville and Marble make quarterly trips to Redstone, while Mr. Anderson visits either once a year or quarterly.[10] (Doc. 16 at ¶ 11.) Critically, Fordham and K&K's contract manager, Dan Tyree, consult KCA when they plan to terminate a K&K employee.[11] (*Id.* at ¶ 13.) Finally, Mrs. Anderson signs the paychecks for K&K

---

[9] These rules mandate the conditions of employment, and they even mandate when an employee must be terminated. (Doc. 16, Ex. H at Rule 23.) The rules describe the chain of command in the company as follows: "Employees will observe the proper chain of supervision. The chain of supervision begins with the immediate supervisor and ends with home office management . . . Violations of this rule is [sic] considered serious and will be cause for termination of employment." (*Id.*, Ex. H at Rule 24.) "Home office management" is not defined in the rules, but the address for the "administrative office" located in Kentucky appears at the top of the rules themselves. (*Id.*)

[10] KCA disputes that Mr. Anderson makes quarterly trips, contending that he only visits Redstone at most once each year. (Doc. 18 at ¶ 11.) KCA does not dispute, however, that Mr. Anderson traveled to Redstone in 2005 to investigate discrimination complaints, (doc. 16 at ¶ 22; doc. 18 at ¶ 22), or that in 2004 and 2005, Anderson received numerous phone calls from Howard about violations of work rules by K&K employees, and that Anderson traveled to Alabama to investigate those complaints, in addition to his regular trips to Redstone. (Doc. 16 at ¶ 20; Doc. 18 at ¶ 20.)

[11] KCA disputes that this always occurs, qualifying that K&K "usually" contacts KCA about terminations. (Doc. 18 at ¶ 13.) Although KCA states in its reply brief that "K&K did not make the decision to terminate plaintiff's employment," (*id.*), KCA likely intended to write that "KCA did not make the decision . . . ." Viewed as written, however, this statement appears to be an admission that K&K does not make its own employment decisions, but that, by reasonable inference, KCA does.

employees, presumably paying the employees from the Joint Venture Operating Account pursuant to KCA and Fordham's joint venture agreement. (*Id.*, Ex. A at 5, Ex. B.)

In May 2005, Sunna Reed ("Reed"), a former K&K employee, filed an EEOC charge against K&K alleging discrimination. (*Id.* at ¶ 21, Ex. J.) In connection with the EEOC's investigation of this charge, the attorney representing both KCA and K&K sent documents to the EEOC with the client and matter name, "KCA Corporation -- Sunna Reed." (*Id.*, Ex. K.) Reed subsequently filed a lawsuit against K&K, for which Howard submitted a declaration. (*Id.* at ¶ 25, Ex. M.) Howard was terminated from K&K on August 22, 2005, a week after she provided the declaration, for, among other things, violation of Company Work Rule 23, a rule which requires employee termination for certain offenses. (Doc. 16 at ¶ 28, Ex. H at Rule 23; Doc. 1 at ¶ 34.) Howard filed a discrimination charge with the EEOC on November 17, 2005, claiming that she was retaliated against based on her gender, and that she had spoken with "Mr. Anderson, the owner" about her complaints. (Doc. 1, Ex. A.) Neville attests that "KCA was aware of the status of the filing of an EEOC charge by Doris Howard and kept apprised of its progress." (Doc. 9-4 at ¶ 6.) Neville states, however, that KCA did not have the authority to raise defenses or participate in any EEOC conciliation proceedings. (*Id.* at ¶¶ 6, 7.) The EEOC did attempt conciliation efforts with respect to this charge, sending a letter on September 26, 2006, to K&K and KCA's common attorney as well as to "Mr. & Mrs. Anderson, Owners, K&K Food Services," notifying them that the conciliation had

been unsuccessful. (*Id.*, Ex. L.) Howard filed the complaint initiating the present case on February 20, 2007. (Doc. 1.)

### III. Analysis

**A. Dismissal Based on Lack of Subject Matter Jurisdiction**

**1. KCA asserts a factual attack on jurisdiction.**

KCA asserts a factual attack on the court's subject matter jurisdiction because it has presented extrinsic evidence, including testimony and affidavits, that challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings. Because KCA has presented a factual attack, the court must determine whether the jurisdictional question also implicates the merits of Howard's claims; if it does, the court must not dismiss the claims against KCA for lack of subject matter jurisdiction and must instead evaluate the claims for summary judgment.

**2. Jurisdiction is intertwined with the merits of Howard's claims, so the court may not dismiss the claims for lack of subject matter jurisdiction.**

In *Morrison v. Amway Corporation*, 323 F. 3d 920 (11th Cir. 2003), the Eleventh Circuit explicitly disagreed with its previous opinion in *Scarfo v. Ginsburg*, 175 F.3d 957 (11th Cir. 1999), *cert. denied*, 529 U.S. 1003 (2000), which had held that "employer" status under Title VII is a jurisdictional issue only. Instead, the court in *Morrison* held that circuit law was correctly stated in an even earlier case, *Garcia v. Copenhaver, Bell & Associates*, 104 F.3d 1256 (11th Cir. 1997), which concluded that an entity's status as an "employer" under the various employment statutes, including under Title VII, implicates

11

both jurisdiction and the underlying merits of a claim. *See Morrison*, 323 F.3d at 925–30 (applying the "earliest case" rule to justify following *Garcia*, not *Scarfo*, but declining to overrule *Scarfo* because the court was not sitting en banc). Using *Morrison* (and by extension, *Garcia*) as the correct statement of Eleventh Circuit law, KCA's factual attack on jurisdiction also implicates the merits of Howard's claims, namely, the issue of whether KCA is Howard's "employer" for Title VII purposes. As a result, the court may not dismiss Howard's claims for lack of subject matter jurisdiction.

**3. Even if jurisdiction is not intertwined with the merits, subject matter jurisdiction exists because Title VII's purposes are served despite Howard's failure to name KCA in her EEOC charge.**

Even if KCA's jurisdictional attack is not intertwined with the merits of Howard's claims, the purposes of Title VII are satisfied, so Howard's failure to name KCA in her EEOC charge does not invalidate the court's jurisdiction. In *Virgo v. Riviera Beach Associates*, the Eleventh Circuit cautioned that "[o]rdinarily, a party not named in the EEOC charge cannot be sued in a subsequent civil action." 30 F.3d at 1358 (11th Cir. 1994). "This naming requirement serves to notify the charged party of the allegations and allows the party an opportunity to participate in conciliation and voluntarily comply with Title VII." *Id.* The court in *Virgo* noted, however, that courts liberally construe this requirement, and it further established a non-exhaustive list of several factors that a court can use to exempt a plaintiff from the harsh requirement of naming all liable parties in the EEOC charge, by determining whether the notice and conciliation purposes of Title VII

are fulfilled such that "a party unnamed in the EEOC charge may be subjected to the jurisdiction of federal courts." *Id.* at 1358–59 (emphasizing that courts do not apply a rigid test). These factors are:

> (1) the similarity of interest between the named party and the unnamed party;
> (2) whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed;
> (3) whether the unnamed parties received adequate notice of the charges;
> (4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and
> (5) whether the unnamed party actually was prejudiced by its exclusion from the EEOC proceedings.

*Id.* at 1359 (deeming the purposes of Title VII sufficiently satisfied to permit jurisdiction over an unnamed party that owned the named party, as well as over unnamed parties that were the general partners of the owner and that received actual notice of the EEOC charges filed).

The court in *Williams* deemed the application of the *Virgo* factors dispositive of its case, deciding that 1) there was no similarity of interest based on the lack of overlap of the officers or control group of KCA and K&K; 2) the plaintiff should have been able to ascertain the identity of KCA at the time the EEOC charge was filed because she was able to identify it for purposes of her court complaint;[12] 3) KCA did not receive adequate

---

[12] The conclusion in *Williams* that the plaintiff should have been able to ascertain the identity of KCA at the time she filed her EEOC charge does not follow from the premise that she knew about KCA at the *later* time at which she filed her complaint. In fact, this identification factor likely exists as part of the *Virgo* exception to a strict Title VII naming requirement because it allows a plaintiff who is unaware of an entity's existence or corporate structure at the time she

notice of the charges because even if it knew that there were charges against K&K, it did not know there were charges against KCA;[13] 4) KCA did not have an adequate opportunity to participate in the reconciliation process because it had no authority to participate on K&K's behalf; and 5) KCA was actually prejudiced by its exclusion from the EEOC proceedings because it did not know that it had charges against which to defend and did not have any authority to determine a response to the charges. (Doc. 9-2 at 19–26.)

In contrast, the *Reed* opinion declared that the purposes of Title VII *were* fulfilled using the *Virgo* factors because 1) KCA held part-ownership of K&K and was engaged in similar business pursuits; 2) both entities benefitted from the prompt resolution of employee grievances and the concomitant avoidance of lawsuits, which were shared interests; 3) there was no evidence conclusively showing that the plaintiff actually knew of KCA's relationship with K&K at the time her EEOC charge was filed; 4) KCA was represented by the same attorneys as K&K, and certain records relating to the EEOC charge were provided by KCA to the EEOC by, or on behalf of, KCA; 5) KCA was not substantially prejudiced by the plaintiff's omission. (Doc. 16, Ex. I, at 15–16.)

---

files her EEOC charge, but who later discovers the unnamed entity's potential liability in time for the filing of the complaint, to still proceed with her claim. There is no indication in the *Williams* opinion that the plaintiff unreasonably delayed in discovering KCA's existence or purposely excluded KCA from her EEOC charge.

[13] *Williams* seems to conclude that KCA could not have received actual notice of any charges unless such charges were filed against KCA specifically, which would obviate the purpose of this factor in helping to create an exception to the Title VII naming requirement.

This court finds the *Reed* analysis more persuasive than that in *Williams*, especially in light of the statement in *Virgo* that courts construe the EEOC naming requirement liberally. In the instant case, considering the *Virgo* factors, the evidence presented demonstrates that KCA, the unnamed party, and K&K, the named party, have shared interests based upon: KCA's 49% ownership of K&K; KCA's assumption of certain K&K duties, especially with respect to labor and employment matters; and the companies' common management structure, including immediate supervision by Neville and Mr. Anderson, KCA management, of K&K's employees. In addition, there is no evidence that Howard could have ascertained KCA's identity at the time her EEOC charge was filed, or that her failure to name KCA in her charge was due to any factor other than her ignorance of K&K's joint venture structure. Even though KCA was not named in Howard's charge, its own management admitted that it was aware of her charge and kept apprised of its progress. KCA also had an adequate opportunity to participate in conciliation proceedings as a joint venturer with 49% ownership in K&K, and KCA likely did participate in the proceedings since Mr. and Mrs. Anderson were, in fact, recipients of the EEOC's letter regarding the failure of the conciliation efforts. Finally, there is insufficient evidence to show that KCA was substantially prejudiced by its omission from Howard's charge. Quite the opposite, it appears that Howard would be substantially prejudiced by KCA's exclusion from the case. Thus, Howard's claims against KCA should not be dismissed because of Howard's failure to name KCA in her EEOC charge.

**B. Summary Judgment**

In its motion, KCA asserts as facts supporting summary judgment that Howard was not employed by KCA, that KCA does not employ the employees of K&K, and that KCA does not do business as K&K.  (Doc. 9 at ¶ 5.)  All of these assertions are based upon the affidavit of Neville, KCA's general manager.  (Doc. 9-4 at ¶¶ 4, 5.)  Even if this motion and accompanying affidavit do meet KCA's initial burden and establish the absence of a genuine issue of material fact, Howard has produced sufficient evidence of a genuine issue for trial, requiring that the court deny summary judgment.

**1. There are at least five relevant theories regarding whether KCA is Howard's "employer."**

Howard has identified three theories upon which KCA should be held to be Howard's "employer" for the purposes of Title VII liability: a "joint employer" theory, a "highly integrated companies" theory, and a "joint venture" theory.  In addition, the court in *Reed* evaluated two other theories to decide this identical issue, the "*Morrison-Welch* test" and an agency theory.

**a. *Morrison-Welch* Test[14]**

As the court stated in *Reed*, the Eleventh Circuit has considered whether an entity is an individual's employer by evaluating the following three factors: 1) whether or not

---

[14] The court in *Reed* entitled this theory the "*Morrison-Welch* test" because it is derived from two Eleventh Circuit opinions, *Morrison v. Magic Carpet Aviation*, 383 F.3d 1253, 1255 (11th Cir. 2004) and *Welch v. Laney*, 57 F.3d 1004, 1011 (11th Cir. 1995). (Doc. 16, Ex. I at 9–10.)

the employment took place on the premises of the alleged employer; 2) how much control the alleged employer exerted on the employees; and 3) whether or not the alleged employer had the power to fire, hire, or modify the employment condition of the employees. *Morrison v. Magic Carpet Aviation*, 383 F.3d 1253, 1255 (11th Cir. 2004) (finding that, in an FMLA case, the entity in question was not the plaintiff's employer because even though it could exert significant influence over employment decisions, it did not actually have the power to hire or fire the plaintiff directly); *Welch v. Laney*, 57 F.3d 1004, 1011 (11th Cir. 1995).

### b. "Joint Employer" Theory

"[W]here two entities contract with each other for the performance of some task, and one company retains sufficient control over the terms and conditions of employment of the other company's employees, we may treat the entities as 'joint employers' and aggregate them." *Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1341 (11th Cir. 1999) (evaluating Title VII's definition of "employer"). As applied to a Title VII case, this theory "concentrate[s] on the degree of control an entity has over the adverse employer decision on which the Title VII suit is based." *Llampallas v. Mini-Circuits Lab, Inc.*, 163 F.3d 1236, 1244–45 (11th Cir. 1998) (holding that because an alleged employer had "absolutely nothing to do" with the plaintiff's termination, the adverse employment decision, it could not be held liable on either a "single employer" or "joint employer" theory of liability).

### c. "Highly Integrated Companies" Theory

"[W]here two ostensibly separate entities are 'highly integrated with respect to ownership and operations,' we may count them together under Title VII." *Lyes*, 166 F.3d at 1341 (quoting *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir. 1987) (internal quotations omitted)).

### d. "Joint Venture" Theory

Alabama law requires joint ventures to have a community of interest and a right to joint control, and it regards the question of whether parties were engaged in a joint venture as one for a jury, unless the court can rule on the issue as a matter of law. *Arndt v. City of Birmingham*, 547 So.2d 397, 399–400 (Ala. 1989). Furthermore, it establishes the law of joint ventures as equivalent to that of partnerships. *Carlton v. Ala. Dairy Queen, Inc.*, 529 So.2d 921, 922 (Ala. 1988). "Partnership law imposes vicarious liability on a partner for the wrongful acts or omissions of other partners in the ordinary course of business." *Id.* While the fact that an entity is in a joint venture with a Title VII employer does not automatically make that entity also an "employer" under Title VII, *see, e.g.*, *Taylor v. Texaco*, 510 F. Supp. 2d 1255, 1261 (N.D. Ga. 2007), other circuits have concluded that joint venturers who exert a significant amount of control over the employee's opportunities, or who have interrelated operations, common management and ownership, and centralized control of labor relations, can be held liable as "employers" in a Title VII action. *See Hulett v. America's Finest Serv. Co.*, No. 03-2497, 2005 WL

2233261, at *10, *10 n.3 (N.D. Ohio Sept. 14, 2005) (explaining decisions by the Second and Sixth Circuits).

### e. Agency Theory

"[W]here an employer delegates sufficient control of some traditional rights over employees to a third party, [courts] may treat the third party as an agent of the employer [under 42 U.S.C. § 2000e(b)] and aggregate the two." *Lyes*, 166 F.3d at 1341; (doc. 16, Ex. I at 14 n.37) (finding that where agency exists, a court can adjudge both the principal and the agent liable for discriminatory practices).

**2. Based on the evidence in the record, taken in the light most favorable to Howard, a genuine issue of material fact exists under *at least one* of the above theories as to whether KCA was Howard's employer for the purposes of Title VII liability.**

As the court found in *Reed*, the evidence presented in the record precludes a finding that, as a matter of law, there is no genuine issue of material fact under any one of the above theories. While Howard did not submit conclusive evidence that KCA actually issued the decision to terminate her employment, she did submit evidence that KCA has nearly 50% ownership of K&K as an acknowledged joint venturer, that KCA management created the workplace rules under which Howard was employed (and terminated) and maintained exclusive authority to change those rules, and that KCA management has been specifically and heavily involved in K&K's labor and employment matters, including the investigation of discrimination charges filed against K&K.

Under at least the *Morrison-Welch* test and the "joint venture" theory, then, which both turn upon the issue of control over employment, there is a genuine issue of material fact as to whether KCA had sufficient control over K&K's labor relations, and specifically its relations with Howard, that KCA was Howard's "employer." More generally, there is a genuine issue of material fact as to whether KCA had such significant control over all of K&K's activities that the companies had virtually integrated operations, which would render KCA liable as Howard's "employer" under the other three theories as well.

## IV. Conclusion

For the foregoing reasons, the court is of the opinion that it does have subject matter jurisdiction over Howard's claims against KCA, and that there is a genuine issue of material fact as to whether KCA is Howard's "employer" for the purpose of Title VII liability. An Order denying KCA's Motion to Dismiss Plaintiff's Complaint, or, in the Alternative, Motion for Summary Judgment, will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 28th day of January, 2008.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE